## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

JUSTIN SCOTT,                       :
                                    :
           Plaintiff,          :      Civ. No. 13-2578 (PGS) (LHG)
                                    :
        v.                       :      **OPINION**
                                    :
CHARLES ELLIS, et al.,        :
                                    :
           Defendants.       :
_____ :

**PETER G. SHERIDAN, U.S.D.J.**

## I.      INTRODUCTION

Plaintiff is confined at the Passaic County Jail in Paterson, New Jersey. Plaintiff brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 and has submitted an application to proceed *in forma pauperis*. Based on the *in forma pauperis* application, the Court will grant Plaintiff's application and will order the Clerk to file the complaint.

At this time, the Court must review the complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from suit. Upon screening the complaint, the complaint will be permitted to proceed in part for the reasons that follow.

## II.      BACKGROUND

Plaintiff names several defendants in the complaint; specifically: Charles Ellis, Linda Rogers, Patricia Hundley, Mary Knight, Christopher Estwan, Sergeant Creighton, Sergeant Miszak, Sergeant Walker and Christopher Frasella.

A.  <u>Charles Ellis</u>

Petitioner states that Charles Ellis is the warden of the Mercer County Correction Center. He claims that Ellis subjected him to cruel and unusual punishment, denied him access to the courts, illegally censored his legal research and denied him the right to practice his religion. Furthermore, Plaintiff states that all acts committed by Ellis were in retaliation for Plaintiff exercising his First Amendment right to file grievances.

Plaintiff states that on or about August 29, 2012, Ellis ordered him to be kept in a cell with no blanket, sheets, socks, towels, jumper or other articles of clothing to keep Plaintiff sufficiently warm in temperatures of under thirty degrees due to the air conditioning. Furthermore, he states that Ellis ordered him to be housed in a cell with no running water and that oil and filthy water covered the cell including the mat Plaintiff slept on.  Plaintiff states that these conditions lasted a month.  Plaintiff also alleges that Ellis ordered that he be housed in similar conditions in November 2012.

Plaintiff further states that Ellis deprived him from freely practicing his religion in August 2012.  Ellis allegedly ordered that Plaintiff not be allowed to participate in prayers and attend a religious ceremony.

Finally, Plaintiff alleges that Ellis ordered his legal work to be taken and not returned. Ellis's actions purportedly caused Plaintiff to forfeit civil complaints and prevented Plaintiff from filing motions in court to defend himself in a state case.  Because of Ellis's actions, Plaintiff is now purportedly barred from such actions and has been hindered in preparing for trial.

B. <u>Linda Rogers</u>

Plaintiff states that Linda Rogers is the Program Service Coordinator at the Mercer County Correction Center.  Plaintiff contends that Rogers denied him access to the courts and denied him his right to practice his religion.  Furthermore, he contends that all actions of Rogers were in retaliation of Plaintiff exercising his First Amendment right to file grievances.

Plaintiff alleges that Rogers did not allow him access to a typewriter.  Furthermore, according to Plaintiff, she censored his legal research and refused to allow Plaintiff to get necessary copies of a civil complaint which prevented him from filing a civil complaint.  Plaintiff also states that Rogers denied him a meaningful way of researching case law and did not allow him necessary legal assistance.  Finally, Plaintiff states that Rogers deprived him of access to a social worker.

C. <u>Patricia Hundley & Mary Knight</u>

Plaintiff states that Patricia Hundley is the Head of the Medical Department at Mercer County Correctional Center.  Mary Knight is the Director of Nursing at the Mercer County Correction Center.  He alleges that both of these Defendants subjected him to cruel and unusual punishment by depriving him of medical care.  More specifically, he states as follows with respect to these two Defendants:

> Under the authority of defendants Hundley and Knight as County officials, and while acting under color of state law, violated plaintiff's state, federal, and civil rights, under state, federal constitutions.
>
> Through policies the above mentioned defendants put in place, as well as under their authority, plaintiff was denied medical treatment, causing plaintiff to get several infections in his gums. This caused plaintiff to suffer extreme physical pain and suffering.

(Dkt. No. 1 at p. 12.)

3

D.  Christopher Estwan

Plaintiff states that Christopher Estwan is a Sergeant at the Mercer County Correction

Center.  He states that Estwan subjected Plaintiff to cruel and unusual punishment, denied

Plaintiff access to the courts, denied Plaintiff medical attention, and destroyed Plaintiff's

personal property.  More specifically, Plaintiff alleges that on August 29, 2012, Estwan ordered

Plaintiff be stripped naked and placed back in a water and oil covered cell.  Furthermore,

Plaintiff was not given any blankets, sheets, running water, toothbrush, toothpaste, soap or toilet

paper.  He also was kept in a cell with a temperature of thirty degrees due to the air conditioning.

Plaintiff states that Estwan refused to permit him to clean his cell.

Plaintiff also contends that on August 29, 2012, Estwan destroyed his personal property

and legal paperwork that was pertinent to Plaintiff's criminal case.  Estwan refused to permit

Plaintiff to obtain a replacement of his destroyed legal work which caused Plaintiff not to be able

to file motions in court.  Estwan also took Plaintiff's pens, paper and stamped envelopes which

also purportedly denied him his right to access to the courts.

Finally, Plaintiff states that "Estwan inflicted cruel and unusual punishment on plaintiff

by denying plaintiff medical attention, when plaintiff informed him he was having severe chest

pains, and difficulties breathing as well."  (Dkt. No. 1 at p. 14.)

E.  J. Creighton

Plaintiff states that J. Creighton is a Sergeant at the Mercer County Correction Center.

Plaintiff claims that Creighton subjected him "to threats, harassment, and abuse, as well as

destroyed plaintiff's legal documents and personal property."  (Dkt. No. 1 at p. 7.)  Plaintiff

states that all acts committed by Creighton were in retaliation for Plaintiff filing grievances.

More specifically, Plaintiff states that on August 30, 2012, after Plaintiff filed a grievance

against Officer Snyder, Creighton "harassed, intimidated and threatened plaintiff with physical violence and death – causing plaintiff to fear for his life." (*Id.* at p. 14.)  Furthermore, on September 30, 2012, Plaintiff alleges that Creighton purposefully destroyed Plaintiff's legal research, eye glasses, urinated on Plaintiff's bed and threatened Plaintiff with physical violence if he filed another grievance.

F.  <u>Sergeant Miszak</u>

Plaintiff states that Sergeant Miszak is a Sergeant at the Mercer County Correction Center.  Plaintiff claims that Miszak assaulted him while he was strapped down in a restrained chair.  More specifically, Plaintiff states that Miszak struck him in the chest on November 16, 2012, while he was already restrained.  Plaintiff further states that this was done in retaliation for his filing of grievances.

G.  <u>Sergeant Walker</u>

Plaintiff states that Sergeant Walker is a Sergeant at the Mercer County Correction Center.  He claims that Walker inflicted cruel and unusual punishment on Plaintiff on November 15, 2012, by purposefully restraining Plaintiff too tightly while he was in a restraint chair. Plaintiff states that he had to receive medical care later due to the restraints being put on too tightly.

H.  <u>Christopher Frascella</u>

Plaintiff states that Christopher Frascella is an officer at the Mercer County Correction Center.  On November 22, 2012, Plaintiff states that Frascella inflicted cruel and unusual punishment on him by denying him medical attention when he informed Frascella that he was having breathing and heart complications.  According to Plaintiff, Frascella ignored Plaintiff and told Plaintiff to file "one of your grievances."  (Dkt. No. 1 at p. 16.)   Plaintiff contends that

Frascella's actions were in retaliation for Plaintiff previously filing a grievance against him on October 21, 2012.

### III.   STANDARD OF REVIEW

A. Standard for *Sua Sponte* Dismissal

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 28 U.S.C. § 1997e.  The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To survive *sua sponte* screening for failure to state a claim[1], the complaint must allege "sufficient factual matter" to show that the claim is facially plausible.  *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Belmont v. MB Inv. Partners, Inc.*, 708

---

[1] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)."  *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (per curiam) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (per curiam) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).  Moreover, while *pro se*

pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their

complaints to support a claim."  *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir.

2013) (citation omitted) (emphasis added).

B.  Section 1983 Actions

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of

his constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress, except that in any action brought against a
> judicial officer for an act or omission taken in such officer's
> judicial capacity, injunctive relief shall not be granted unless a
> declaratory decree was violated or declaratory relief was
> unavailable.

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right

secured by the Constitution or laws of the United States, and second, that the alleged deprivation

was committed or caused by a person acting under color of state law.  *See Harvey v. Plains Tp.*

*Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487

U.S. 42, 48 (1988).

**IV.    DISCUSSION**

A.  Charles Ellis

As stated above, Plaintiff raises several different claims against Defendant Ellis.

Specifically, he claims that Ellis subjected him to cruel and unusual punishment, prevented him

from freely exercising his religion, denied him access to courts and retaliated against him for
using his First Amendment rights.  Each of these claims is screened in turn.

      i.    *Cruel and Unusual Punishment*

Plaintiff's cruel and unusual punishment claim is analyzed under the Due Process Clause
because Plaintiff alleges in the complaint that he is a pre-trial detainee.  *See Tapp v. Proto*, 404
F. App'x 563, 566 (3d Cir. 2010) (per curiam) (noting that plaintiff's claims that arise when he is
a pretrial detainee are prosecuted under the Due Process Clause).  A pre-trial detainee is entitled
to at least those constitutional rights that are enjoyed by convicted prisoners.  *See Bell v. Wolfish*,
441 U.S. 520, 545 (1979).  To state a claim for cruel and unusual punishment, a plaintiff must
allege both an objective and a subjective component.  *See Wilson v. Seiter*, 501 U.S. 294, 298
(1991); *see also Counterman v. Warren Cnty. Corr. Facility*, 176 Fed. Appx. 234, 238 (3d Cir.
2006).  Only "extreme deprivations" are sufficient to make out an Eighth Amendment claim.
*See Hudson v. McMillan*, 503 U.S. 1, 9 (1992).  As to the objective component, only those
deprivations denying the "minimal civilized measure of life's necessities," which includes food,
clothing, shelter, sanitation, medical care and personality safety qualify as sufficiently grave to
form the basis for an Eighth Amendment violation.  *See Betts v. New Castle Youth Dev. Ctr.*, 621
F.3d 249, 256 (3d Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 832, 835 (1994)).  As to
the subjective component, the plaintiff must show that the prison official acted with deliberate
indifference to the prisoner's health or safety.  *See Wilson*, 501 U.S. at 298-99.

Plaintiff's allegations against Ellis state a cruel and unusual punishment claim.
Specifically, Plaintiff has alleged both a subjective and an objective component based on the
facts alleged as outlined in Part II, *surpa*.  To reiterate, Plaintiff alleges that Ellis ordered
Plaintiff be kept in a cell under thirty degrees with no blankets, sheets, socks, towels or other

articles of clothing to keep Plaintiff sufficiently warm.  Additionally, Ellis purportedly ordered

Plaintiff to be placed in a cell with no running water and that had oil and filthy water covering

the cell.  Based on these allegations, the cruel and unusual punishment claim will be permitted to

proceed against Ellis.

ii.   *Access to Courts*

Plaintiff also alleges that Ellis ordered that his legal work be taken and not returned.  He

claims that this prevented him from filing civil complaints and motions to defend himself

because the statute of limitations has run.

"Under the First and Fourteenth Amendments, prisoners retain a right of access to the

courts."  *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citing *Lewis v. Casey*, 518 U.S.

343, 346 (1996)).  "Where prisoners assert that defendants' actions have inhibited their

opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury'

– that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that

they have no other "remedy that may be awarded as recompense" for the lost claim other than in

the present denial of access suit."  *Id.* (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).

Thus, to satisfy the requisite pleading requirements, "[t]he complaint must describe the

underlying arguable claim well enough to show that it is 'more than mere hope,' and it must

describe the 'lost remedy.'"  *Id.* at 205-06 (footnote omitted) (citing *Christopher*, 536 U.S. at

416-17).

In *Monroe*, the Third Circuit determined that the complaint failed to state an access to

courts claim upon which relief could be granted and stated the following:

> In this case, the defendants confiscated all of the plaintiffs'
> contraband and non-contraband legal materials, including their
> legal briefs, transcripts, notes of testimony, exhibits, copies of
> reference books, treatises, journals, and personal handwritten

notes.  In their initial pleadings, the plaintiffs' claim rested solely on the ground that the defendants confiscated their legal materials, contraband and non-contraband alike.  That claim, on its face, was insufficient to state a claim under *Harbury*.  So too were their subsequent amendments, which alleged that they lost the opportunity to pursue attacks of their convictions and civil rights claims but did not specify facts demonstrating that the claims were nonfrivolous.  Nor did they maintain that they had no other remedy to compensate them for their lost claims.  Even liberally construing their complaints as we must do for *pro se* litigants, they do not sufficiently allege that they have suffered an actual injury.

536 F.3d at 206 (internal citation and footnote omitted).  Plaintiff's complaint fails to describe the underlying arguable claims that he was prevented from raising due to Ellis's actions.  Therefore, pursuant to the pleading standards set forth in *Monroe*, Plaintiff fails to state an access to courts claim against Defendant Ellis.

      iii.    *Free Exercise of Religion*

Plaintiff next claims that Ellis deprived him from practicing his religion when he ordered that Plaintiff not be allowed to participate "in the Obligatory Eid Prayer."  (Dkt. No. 1 at p. 10.) "[C]onvicted prisoners do not forfeit all constitutional protections by reason of . . . conviction and confinement in prison."  *Bell*, 441 U.S. at 545 (citations omitted).  "The Free Exercise Clause of the First Amendment prohibits prison officials from denying an inmate 'a reasonable opportunity of pursuing his faith.'"  *Bland v. Aviles*, No. 11-1742, 2012 WL 137783, at *6 (D.N.J. Jan. 18, 2012) (quoting *Cruz v. Beto*, 405 U.S. 319, 322 & n.2 (1972)).  "The mere assertion of a religious belief does not automatically trigger First Amendment protections, however.  To the contrary, only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection."  *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000); *see also Sutton v. Rasheed*, 323 F.3d 236, 250-51 (3d Cir. 2003).

Plaintiff does not allege in the complaint what religion he is nor does he allege that those religious beliefs are sincerely held.  His allegation that Ellis prevented him from participating in a prayer ceremony, standing alone, does not suggest that Ellis "'placed a substantial burden on the observation of a central religious belief or practice,'" *see Witcher v. Kerestes*, 410 F. App'x 529 (3d Cir. 2011) (per curiam) (quoting *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989)), as plaintiff does not allege what his religious beliefs are, nor how the prayer ceremony is central to his unnamed religious beliefs.  *Accord id.* (finding that the District Court properly dismissed free exercise claim when plaintiff alleged that defendant removed religious books including two Qurans and two Haidths because these allegations, standing alone did not suggest that defendant placed a substantial burden on the observation of a central religious belief or practice).  Accordingly, the complaint fails to state a claim that Ellis denied Plaintiff his right to free exercise of his religion.

iv.  *Retaliation*

Finally, Plaintiff alleges that Ellis committed the actions alleged in the complaint in retaliation for Plaintiff exercising his First Amendment right to file grievances.  An official who retaliates against an inmate for exercising his constitutional rights may be liable under § 1983.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).  "Official reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right.'"  *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 588 n.10 (1998)).  "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his

constitutional rights and the adverse action taken against him." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (internal quotation marks and citations omitted).

Plaintiff has sufficiently stated the first prong of alleging a retaliation claim as he has alleged that he engaged in constitutional protected conduct in the form of filing grievances. *See Mearin v. Vidonish*, 450 F. App'x 100, 102 (3d Cir. 2011) (per curiam) ("[T]he filing of grievances and lawsuits against prison officials constitutes constitutionally protected activity.") (citing *Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981)).  In determining whether Ellis's actions as alleged constituted an adverse action, the issue is whether the actions alleged are "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Allah v. Seiverling*, 229 F.3d 220, 226 (3d Cir. 2000) (internal quotation marks and citations omitted).  Plaintiff's cruel and unusual punishment allegations as stated above are sufficient to state an adverse action as a fact finder could conclude that from those facts that Ellis's orders would deter a person of ordinary firmness from exercising his First Amendment rights.  *Accord id.* (finding that plaintiff's allegations were sufficient to state an adverse action where confinement in administrative segregation resulted "in reduced access to phone calls, reduced access to commissary, reduced access to recreation, confinement in his cell for all but five hours per week, denial of access to rehabilitative programs, and significantly, inadequate access to legal research materials and assistance."); *Caldwell v. Luzerne Cnty. Corr. Facility Mgmt. Emps.*, 732 F. Supp. 2d 458, 473 (M.D. Pa. 2010) (plaintiff sufficiently alleged adverse action in retaliation claim where he alleged that defendants participated in subjected him to unconstitutional conditions of confinement).  Furthermore, the Court finds that Plaintiff's allegations that Ellis ordered that Plaintiff's legal work be confiscated also could constitute an adverse action. *Accord Jean-Laurent v. Lane*, No. 11-186, 2013 WL 600213, at *10 (N.D.N.Y.

Jan. 24, 2013) (citation omitted); *report and recommendation adopted by*, 2013 WL 599893 (N.D.N.Y. Feb. 15, 2013); *Gonzales v. Carpenter*, No. 08-629, 2011 WL 768990, at *6 (N.D.N.Y. Jan. 3, 2011) ("[T]heft, confiscation, or destruction of an inmate's legal documents can constitute 'adverse action' for the purposes of a retaliation claim.") (citations omitted), *report and recommendation adopted by*, 2011 WL 767546 (N.D.N.Y. Feb. 25, 2011).

However, Plaintiff's allegation that Ellis deprived him of the free exercise of religion does not state an adverse action.  As explained above, Plaintiff does not allege in the complaint what is his religion nor does he allege that his religious beliefs are sincerely held.  The court recognizes that the mere fact that plaintiff does not state a free exercise claim does not necessarily mean that he has failed to allege a retaliation claim.  Indeed, "'government acts, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right.'"  *Kelly v. York Cnty. Prison*, 340 F. App'x 59, 61 (3d Cir. 2009) (per curiam) (quoting *Mitchell*, 318 F.3d at 530).  However, in this case, preventing Plaintiff from a religious activity on one occasion where Plaintiff fails to allege his religion nor that his religious beliefs are sincerely held, as stated in the complaint, does not constitute an action "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights."  *Allah*, 229 F.3d at 226 (internal quotation marks and citations omitted).

Finally, Plaintiff states in the complaint that Ellis committed these acts in retaliation for his filing grievances.  The Third Circuit has stated that this is sufficient to allege a causal link. *See Kelly*, 340 F. App'x at 61 ("'[T]he word 'retaliation' in his complaint sufficiently implies a causal link between his complaints' and denial of [prisoner] employment [in prison].") (quoting *Mitchell*, 318 F.3d at 530).  Accordingly, Plaintiff's retaliation claim against Ellis will be

permitted to proceed except to the extent that Plaintiff bases his retaliation claim on Ellis's

actions with respect to his free exercise of religion claim.

B. <u>Linda Rogers</u>

Plaintiff raises several claims against Defendant Rogers.  Specifically, the complaint

raises free exercise of religion, access to courts and retaliation claims.  Additionally, Plaintiff

alleges that Rogers deprived him access to a social worker.  Each of these claims is screened in

turn.

i.     *Free Exercise of Religion*

Plaintiff fails to state a free exercise of religion claim against Defendant Rogers. The

complaint simply alleges that Rogers "denied plaintiff [his] right to practice religion."  (Dkt. N. 1

at p. 5.)  This conclusory allegation is insufficient.  Plaintiff does not state that Rogers "'placed a

substantial burden on the observation of a central religious belief or practice.'"  *See Witcher*, 410

F. App'x at 532.

ii.    *Access to Courts*

Plaintiff alleges in the complaint that Rogers denied him access to the courts by:

> not allowing access to a typewriter, after learning plaintiff was in
> the process of filing state motions, and a 1983 claim censoring
> plaintiff's legal research, not allowing him any civil research,
> refusing to allow plaintiff to get necessary copies of a civil
> complaint, thus prevented him from filing civil complaint.
>
> Defendant Rogers denied plaintiff a meaningful way of researching
> relevant law cases and preparing crucial motions and other legal
> documents, pertaining to plaintiffs state case, as well as plaintiff
> filing a civil claim against here within mentioned defendants, by
> not allowing plaintiff necessary assistance in legal research, and
> document preparation.

(Dkt. No. 1 at p. 11-12.)

14

Similar to the reasons why Plaintiff fails to state an access to the courts claim against Ellis, the above allegations against Rogers also fails to state an access to the courts claim against her. The complaint fails to describe the underlying arguable claims that Plaintiff was prevented from raising due to Ellis's actions. Therefore, pursuant to the pleading standards set forth in *Monroe*, Plaintiff fails to state a denial of access to courts claim against Rogers.[2]

iii. *Retaliation*

To the extent that Plaintiff bases his retaliation claim against Rogers due to her denying Plaintiff the right to practice his religion, he fails to state a claim. Similar to the discussion with respect to Ellis, Plaintiff does not allege what religion he is nor does he allege that those religious beliefs are sincerely held. Plaintiff's allegations that Rogers prevented Plaintiff from practicing his religion as stated in the complaint do not constitute an action "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Allah*, 229 F.3d at 226 (internal quotation marks and citations omitted).

Plaintiff also appears to base his retaliation claim against Rogers on his denial of access to courts claim. At this stage of the proceedings, the Court will permit that portion of Plaintiff's retaliation claim against Rogers to proceed. Indeed, Plaintiff alleges at least in part that Defendant Rogers censored his legal research. Some courts have found that removing legal materials from a prisoner's cell and failing to return them states a cognizable retaliation claim. *See Jean-Laurent*, 2013 WL 600213, at *10 (N.D.N.Y. Jan. 24, 2013) (destruction of legal material and documents constitutes an adverse action for purposes of retaliation claim); *Doe v.*

---

[2] Additionally, it is worth noting that plaintiff does not have a constitutional right to a typewriter. *See Taylor v. Coughlin*, 29 F.3d 39, 40 (2d Cir. 1994); *see also Jacobs v. Dist. Attorney's Office*, No. 10-2622, 2013 WL 3773419, at *1 (M.D. Pa. July 17, 2013) (noting that there is no constitutional right to have access to a typewriter while in prison) (citation omitted); *Alexander v. Fed. Bureau of Prisons*, No. 05-248, 2006 WL 1620155, at *4 (W.D. Pa. June 12, 2006) (citations omitted).

*Yates*, No. 08-1219, 2009 WL 3837261, at *6 (E.D. Cal. Nov. 16, 2009) (finding that plaintiff

had stated a cognizable retaliation clam where legal materials were removed and that when they

were returned many of the legal documents were missing); *report and recommendation adopted

by*, 2010 WL 1287056 (E.D. Cal. Jan. 13, 2010).

      iv.    *Denial of Access to Social Worker*

Finally, Plaintiff alleges that Rogers "deprived plaintiff access to a social worker."  (Dkt.

No. 1 at p. 12.)  To the extent that this allegation can be construed as its own stand-alone claim,

the Court construes this allegation as a deprivation of medical care claim.  The Third Circuit has

explained that:

> For the delay or denial of medical care to rise to a violation of the
> Eighth Amendment's prohibition against cruel and unusual
> punishment, a prisoner must demonstrate "(1) that defendants were
> deliberately indifferent to [his] medical needs and (2) that those
> needs were serious."  *Rouse v. Plaintier*, 182 F.3d 192, 197 (3d
> Cir. 1999).  Deliberate indifference requires proof that the official
> "knows of and disregards an excessive risk to inmate health or
> safety."  *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582
> (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837
> (1994)).  We have found deliberate indifference where a prison
> official:  "(1) knows of a prisoner's need for medical treatment but
> intentionally refuses to provide it; (2) delays necessary medical
> treatment based on a nonmedical reason; or (3) prevents a prisoner
> from receiving needed or recommended treatment."  *Rouse*, 182
> F.3d at 197.  Deference is given to prison medical authorities in the
> diagnosis and treatment of patients, and courts "disavow any
> attempt to second-guess the propriety or adequacy of a particular
> course of treatment. . . (which) remains a question of sound
> professional judgment."  *Inmates of Allegheny Cnty. Jail v. Pierce*,
> 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551
> F.2d 44, 48 (4th Cir. 1977)).  Allegations of negligent treatment or
> medical malpractice do not trigger constitutional protections.
> *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

*Pierce v. Pitkins*, No. 12-4083, 2013 WL 1397800, at *2 (3d Cir. Apr. 8, 2013) (per curiam).

The complaint fails to allege that Rogers was deliberately indifferent to Plaintiff's medical needs.  Plaintiff does not allege that Rogers knew of his need to be seen by a social worker for a purported medical need, but that Rogers intentionally refused to provide it, delayed medical treatment based on a nonmedical reason or prevented Plaintiff from receiving needed recommended treatment.  Additionally, Plaintiff fails to state what serious medical need required him to be seen by a social worker.  Accordingly, Plaintiff fails to state a constitutional claim based on his allegation that Rogers deprived him from seeing a social worker.

C.  <u>Patricia Hundley & Mary Knight</u>

Plaintiff states that Defendants Hundley and Knight are liable because they subjected him to cruel and unusual punishment when they deprived him of medical care.  More specifically, he claims that, "[t]hrough policies the above mentioned defendants put in place, as well as their authority, plaintiff was denied medical treatment, causing plaintiff to get several infections in his gums.  This caused plaintiff to suffer extreme physical pain and suffering."  (Dkt. No. 1 at p. 12.)

The Court previously outlined that to properly raise a denial of medical care claim, a prisoner must allege "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious."  *Rouse*, 182 F.3d at 197.  The complaint fails to allege that Hundley and Knight were deliberately indifferent to Plaintiff's serious medical needs.  He does not allege that these two Defendants knew of his need for medical treatment but intentionally refused to provide it, delayed necessary medical treatment based on a nonmedical reason or prevented prisoner from receiving needed or recommended treatment.  Accordingly, as Plaintiff fails to allege that these two Defendants acted with deliberate indifference, he fails to state an Eighth Amendment failure to provide medical care claim.

17

D. <u>Christopher Estwan</u>

Plaintiff raises several claims against Defendant Estwan.  He claims that Estwan

subjected Plaintiff to cruel and unusual punishment, denied him access to the courts, destroyed

his personal property and denied him medical attention.  Each of these claims is screened in turn.

     i.    *Cruel and Unusual Punishment*

Plaintiff alleges that Estwan ordered Plaintiff be stripped naked and placed into a cell that

was below thirty degrees without sheets, blankets, running water and in a cell that was covered in

oil for one month.  The cruel and unusual punishment allegations against Estwan state a cruel

and unusual punishment claim.  Specifically, Plaintiff has alleged the necessary subjective and

objective components against Estwan to permit this claim to proceed past screening against this

Defendant.

     ii.    *Access to Courts*

Plaintiff alleges that Estwan destroyed his legal paperwork as well as took all of his pens,

paper and stamped envelopes.  He claims that this caused plaintiff not to be able to file motions

in his criminal case, thereby denying him access to the courts.  These allegations fail to state a

denial of access to the courts claim.  Plaintiff's complaint fails to describe the underlying

arguable claims that he was prevented from raising due to Estwan's actions.  Therefore, pursuant

to the pleading standards set forth in *Monroe*, Plaintiff fails to state an access to courts claim

against Estwan.

     iii.    *Destruction of Personal Property*

Plaintiff also states that Estwan is liable to Plaintiff because he destroyed his personal

property.  As this Court has noted:

> An unauthorized deprivation of property by a state actor, whether
> intentional or negligent, does not constitute a violation of the

> procedural requirements of the Due Process Clause of the
> Fourteenth Amendment if a meaningful post-deprivation remedy
> for the loss is available. *Hudson v. Palmer*, 468 U.S. 517, 530-36
> (1984); *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981), *overruled
> in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 328
> (1986). In *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-36
> (1982), the Supreme Court explained, however, that post-
> deprivation remedies do not satisfy the Due Process Clause if the
> deprivation of property is accomplished pursuant to established
> state procedure rather than through random, unauthorized action.

*Stokes v. Lanigan*, No. 12-1478, 2012 WL 4662487, at *4 (D.N.J. Oct. 2, 2012). New Jersey

provides for a post-deprivation remedy for unauthorized deprivation of property by public

employees through the New Jersey Tort Claims Act, N.J. STAT. ANN. § 59:1-1, *et seq. See

Georges v. Ricci*, No. 07-5576, 2007 WL 4292378, at *8 (D.N.J. Dec. 4, 2007) (stating that the

New Jersey Tort Claims Act "provides an adequate post-deprivation remedy to person, including

inmates such as Plaintiff, who believe they were wrongfully deprived of property at the hands of

prison officials.") (citations omitted).

In this case, Plaintiff does not allege that Estwan's actions with respect to his personal

property were a result of an established state procedure. Accordingly, Plaintiff fails to state a

claim against Estwan for depriving him of his personal property. *Accord Peterson v. Holmes*,

No. 12-865, 2012 WL 5451435, at *4-5 (D.N.J. Nov. 7, 2012) (finding plaintiff failed to state

deprivation of property claim where plaintiff alleged no facts that defendants deprived him of

property pursuant to an established state procedure); *Stokes*, 2012 WL 4662487, at *4 (same).

    iv.    *Failure to Provide Medical Care*

Plaintiff also alleges that Estwan denied Plaintiff medical care when Plaintiff informed

him that he was having severe chest pains and difficulties breathing as well. This claim will be

permitted to proceed as it alleges that Estwan was deliberately indifferent to a purported serious

medical need of Plaintiff once he complained of having severe chest pains and was having difficulty breathing.

E.  J. Creighton

Plaintiff alleges that Defendant J. Creighton subjected him to verbal threats and abuse as well as destroyed his legal documents and personal property.  Additionally, Plaintiff alleges that Creighton's actions were in retaliation for Plaintiff's filing of grievances.  Each of these claims is screened in turn.

i.     *Verbal Threats and Harassment*

Plaintiff alleges that on August 30, 2012, Creighton "harassed, intimidated, and threatened plaintiff with physical violence and death – causing plaintiff to fear for his life." (Dkt. No. 1 at p. 14.)  Furthermore, Plaintiff also alleges that Creighton verbally threatened him with physical violence on September 3, 2012.  The Third Circuit has stated that, "[i]t is well established that [a]llegations of threats or verbal harassment, without injury or damage, do not state a claim under 42 U.S.C. § 1983."  *Burkholder v. Newton*, 116 F. App'x 358, 360 (3d Cir. 2004) (internal quotation marks and citations omitted).  Thus, Plaintiff's allegations fail to state a claim against Creighton for his verbal threats and harassment.

ii.    *Destruction of Plaintiff's Property*

Plaintiff alleges that on September 3, 2012, Creighton "entered plaintiff's cell on RID floor, purposely destroyed plaintiff's legal research, prescription eye glasses, urinated on plaintiff's bed."  (Dkt. No. 1 at p. 14.)  Plaintiff does not allege that Creighton's actions with respect to his personal property were a result of an established state procedure.  Accordingly, Plaintiff fails to state a claim against Creighton for depriving him of his personal property. *Accord Peterson*, 2012 WL 5451435, at *4-5; *Stokes*, 2012 WL 4662487, at *4.

20

      iii.    *Retaliation*

Finally, Plaintiff alleges that Creighton's actions were in retaliation for Plaintiff filing grievances.  As previously described, the filing of grievances is a constitutionally protected act under the First Amendment.  However, "[t]hreats and verbal assaults, without more, do not constitute adverse action."  *Hagan v. Rogers*, No. 06-4491, 2010 WL 5343188, at *9 (D.N.J. Dec. 20, 2010) (citing *Gay v. City of Phila.*, No. 03-5358, 2005 WL 1844407, at *5 (E.D. Pa. Aug. 2, 2005); *Hill v. Chalanor*, 128 F. App'x 187, 189 (2d Cir. 2005); *Gill v. Pidlypchak*, 389 F.3d 379, 383 (2d Cir. 2004); *Maclean v. Secor*, 876 F. Supp. 695, 698 (E.D. Pa. 1995); *Prisoners' Legal Ass'n v. Roberson*, 822 F. Supp. 185, 189 (D.N.J. 1993)).  Nevertheless, Plaintiff alleges that Creighton did more than just verbally threaten him.  Indeed, he claims that Creighton destroyed his legal research, prescription eye glasses and urinated on his bed.  These actions could constitute an adverse action.  *See Jean-Laurent*, 2013 WL 600213, at *9.  Finally, Plaintiff alleges that Creighton committed these acts in retaliation for plaintiff filing grievances. The Third Circuit has stated that this is enough to allege a causal link.  *See Kelly*, 340 F. App'x at 61.  Therefore, Plaintiff has stated a retaliation claim against Creighton and this claim will be allowed to proceed past screening.

    F.  <u>Sergeant Miszak</u>

Plaintiff alleges that Defendant Miszak subjected him to cruel and unusual punishment on or about November 16, 2012, when he struck Plaintiff in the chest while Plaintiff was restrained in a restraint chair.  Plaintiff also alleges that Miszak's actions were in retaliation for Plaintiff filing grievances.  Each of these claims is screened in turn.

i.    *Excessive Force*

"The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends standards of decency." *Adderly v. Ferrier*, 419 F. App'x 135, 138 (3d Cir. 2011) (per curiam) (citing *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992)).  In analyzing excessive force claims, the issue is "whether the 'force applied was in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  *Id.* (quoting *Hudson*, 503 U.S. at 7).

> Whether the force applied was excessive requires the examination of several factors outlined by the Supreme Court in *Whitley v. Albers*, 475 U.S. 312, 321 (1986), including:  (1) the needs for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*Id.*; *see also Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000).  However, not "every malevolent touch by a prison guard gives rise to a federal cause of action."  *Hudson*, 503 U.S. at 9.  Thus, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."  *Id.* at 9-10.  Indeed, more recently, the United States Supreme Court has stated that, "[a]n inmate who complains of a 'push or shove' that cause no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).  Nevertheless, as this Court has noted:

> "The Eighth Amendment analysis must be driven by the extent of the force and the circumstances in which it is applied; not by the resulting injuries." *Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002).  Thus, the pivotal inquiry in reviewing an excessive force claim is whether the force was applied maliciously and sadistically to cause harm. *Id.* at 649; *Brooks*, 204 F.3d at 106.  Otherwise, an inmate "could constitutionally be attacked for the sole purpose of

> causing pain as long as the blows were inflicted in a manner that resulted" in injuries that were *de minimus*. *Id.*

*Armstead v. Mee*, No. 11-1740, 2011 WL 1792800, at *5 n.3 (D.N.J. May 9, 2011).

In this case, the allegations of the complaint suggest that Miszak acted in a malicious and excessive manner. Indeed, the complaint alleges that Miszak struck Plaintiff in the chest while he was already restrained in a restraint chair. However, the complaint is silent as to allegations of any injury that Plaintiff sustained as a result of this strike. Since *Wilkins*, courts within this Circuit have found that plaintiffs have failed to state an excessive force claim when they fail to allege in the complaint any injuries whatsoever arising from the defendant's purported unconstitutional actions. *See Campbell v. Gibb*, No. 10-6584, 2011 WL 2669965, at *7 (D.N.J. July 7, 2011) (holding that plaintiff failed to state an excessive force claim where complaint did not allege what injuries plaintiff sustained and did not allege any bruising, cuts, or swelling that would suggest more than *de minimus* force was used); *Cooke v. Goldstein*, No. 10-983, 2011 WL 2119347, at * 4 (D. Del. May 26, 2011) (finding that plaintiff failed to state an excessive force claim when plaintiff alleged that defendant hit him in the chest because plaintiff did not allege any injury from the occurrence). Similarly, the complaint in this case fails to state any injury arising from Miszak's contact with Plaintiff. Accordingly, Plaintiff fails to state an excessive force claim against Miszak.

ii.   *Retaliation*

Plaintiff also alleges that Defendant Miszak's actions were in retaliation for filing grievances against him and other officers. The issue is whether Plaintiff has sufficiently alleged that Miszak's actions constituted an adverse action for purposes of stating a retaliation claim. This requires an analysis of whether Miszak's strike on Plaintiff would deter a person of ordinary

firmness from exercising his First Amendment rights." *Allah*, 229 F.3d at 225.  Upon screening Plaintiff's allegations with respect to this argument, the Court will permit this claim to proceed.

Plaintiff has alleged that he engaged in constitutional protected conduct in the form of filing grievances.  *See Mearin*, 450 F. App'x at 102 (3d Cir. 2011).  Second, he alleges that he suffered an adverse action when Miszak struck him in the chest.  *See Headley v. Fisher*, No. 06-6331, 2008 WL 1990771, at *18 (S.D.N.Y. May 7, 2008) (finding allegation of slap sufficient in complaint to state an adverse action on retaliation claim).  Finally, Plaintiff alleges that Miszak's actions were done in retaliation for his filing of grievances against Miszak and other officers.  This is sufficient to state the causal link.  *See Kelly*, 340 F. App'x at 61.

G. <u>Defendant Walker</u>

As to Defendant Walker, Plaintiff claims that on or about November 12, 2012, Walker inflicted cruel and unusual punishment on him.  More specifically, Plaintiff claims that Walker purposefully put chair restraints on Plaintiff too tightly.  After a nurse told Walker that the restraints were too tight, Walker loosened them.  Thereafter however, Walker retightened the restraints after the nurse left.  Plaintiff alleges that he had to seek medical attention as a result of the tightness of the restraints put in place by Walker.

The Court finds that Plaintiff's allegations as stated above sufficiently allege an excessive force claim.  The allegations of the complaint suggest that Walker acted in a malicious and excessive manner.  Indeed, the complaint alleges that Walker retightened the restraints after the nurse had told him that they were too tight.  Furthermore, unlike Plaintiff's claim of excessive force against Miszak, Plaintiff alleges that he suffered injury as he states that he had to seek medical attention as a result of the tight restraints.  Accordingly, the Court will permit Plaintiff's excessive force claim against Walker to proceed past screening.

H. <u>Defendant Christopher Frascella</u>

Plaintiff raises two claims against Defendant Frascella.  First, Plaintiff alleges that Frascella denied Plaintiff medical attention on or about November 22, 2012.  Plaintiff states that he told Frascella that he was experiencing breathing and heart complications.  Frascella purportedly ignored Plaintiff and refused to get him any medical attention. The complaint also states that Plaintiff passed out as a result of the denial of medical attention.  (*See* Dkt. No. 15 at p. 8.)  Additionally, Plaintiff alleges that Frascella's failure to get him medical attention was in retaliation for Plaintiff filing grievances against him.  Each of these claims is screened in turn.

i. *Refusal to get Medical Care*

The Court finds that Plaintiff has sufficiently alleged a cruel and unusual punishment claim against Frascella for his failure to get Plaintiff medical care.  As previously noted, to state a claim "[f]or the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Pierce*, 2013 WL 1397800, at *2 (citing *Rouse*, 182 F.3d at 197).   In this case, Plaintiff alleges that Frascella was deliberately indifferent to his medical needs because Frascella ignored Plaintiff when he told him that he was experiencing breathing and heart complications. Frascella refused to get Plaintiff any medical attention after being so informed.  Additionally, Plaintiff alleges that he passed out in light of Frascella's failure to get Plaintiff medical care.  At this screening stage, the Court finds that Plaintiff has also alleged a sufficiently serious medical need, particularly in light of his allegation that he passed out from his heart and breathing difficulties.  Accordingly, this claim will be permitted to proceed against Frascella.

ii.    *Retaliation*

Plaintiff also alleges that Frascella refused to get plaintiff medical care in retaliation for Plaintiff filing a grievance against him on October 21, 2012.  More specifically, in refusing to get Plaintiff any medical attention, Plaintiff alleges that Frascella said, "[w]hy don't you write one of your grievances."  (Dkt. No. 1 at p. 16.)  The Court finds that Plaintiff's allegations have sufficiently stated a claim of retaliation against Frascella.  First, Plaintiff has alleged that he engaged in constitutionally protected conduct in the form of filing grievances.  *See Mearin*, 450 F. App'x at 102 (3d Cir. 2011).  Second, Plaintiff alleges an adverse action in the form of Frascella's refusal to get Plaintiff medical attention.  *See Frazier v. Daniels*, 09-3612, 2010 WL 2040763, at *10 (E.D. Pa. May 20, 2010) ("A delay in providing medical treatment constitutes an adverse action for purposes of a retaliation claim.") (citations omitted); *see also Troutman v. Cnty. of Allegheny*, No. 06-1037, 2009 WL 3030215, at *10 (W.D. Pa. Sept. 17, 2009) ("[A] delay or denial of medical treatment would likely deter an individual from making complaints or exercising his or her free speech rights[.]").  Finally, Plaintiff alleges that Frascella's actions were done in retaliation for Plaintiff's previous grievance filing against him.  Indeed, as stated above, upon refusing to get Plaintiff medical attention, Frascella told Plaintiff, "[w]hy don't you write one of your grievances."  (Dkt. No. 1 at p. 16.)  At this screening stage, the Court finds that this is sufficient to show a causal link, or the third prong of stating a retaliation claim.  *Accord Barr v. Diguglielmo*, 348 F. App'x 769, 775 (3d Cir. 2009) (per curiam) ("Barr sufficiently pleaded the third prong of the retaliation test, as his allegations suggest a causal link between his use of the grievance process and the adverse action taken against him.  The complaint alleged that Major Felid stated that he was 'pissed of' that Barr filed a grievance against him, and was willing to move Barr to Graterford's old side if Barr stopped filing grievances."); *see also Kelly*,

340 F. App'x at 61 (finding that prisoner's use of the word "retaliation" in the complaint sufficiently implied a causal link between his complaints and his denial of prison employment). Thus, Plaintiff's retaliation claim will be permitted to proceed.

## V.    REQUEST FOR THE APPOINTMENT OF COUNSEL

Plaintiff has requested the appointment of indigent counsel.  Indigent persons raising civil rights claims have no absolute constitutional right to counsel.  *See Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997).  In determining whether to appoint counsel, a court considers the following:  (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) whether the plaintiff can attain and afford counsel on his own behalf.  *See Tabron v. Grace*, 6 F.3d 147, 155-56, 157 n.5 (3d Cir. 1993); *see also Cuevas v. United States*, 422 Fed. Appx. 142, 144-45 (3d Cir. 2011) (per curiam) (reiterating the *Tabron* factors).  Applying these factors to this case, the Court will deny Plaintiff's request for the appointment of counsel without prejudice.  This case is at its initial stages making several of the factors outlined above difficult to evaluate.  *See Miller v. New Jersey Dep't of Corr.*, Civ. No. 08-3335, 2009 WL 482379, at *15 (D.N.J. Feb. 25, 2009) (citing *Chatterjee v. Phila. Federation of Teachers*, Civ. Nos. 99-4122, 99-4233, 2000 WL 1022979 (E.D. Pa. July 18, 2000).  Accordingly, the request for the appointment of counsel will be denied without prejudice.

## VI.    CONCLUSION

The complaint will proceed against certain Defendants on certain claims as stated above.

Plaintiff's request for the appointment of counsel will be denied without prejudice.  An

appropriate order will be entered.


*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

September 18, 2013